UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES MOORE,                          CASE No. 2:23-cv-11298

    *Plaintiff*,                        Matthew F. Leitman
*v.*                                    United States District Judge

TAVON BROWN,[1] et al.,                 Patricia T. Morris
                                        United States Magistrate Judge
    *Defendants*.
_____/

## REPORT AND RECOMMENDATION ON TAVON BROWN, J. CZARNIOWSKI, CRYSTAL TROUT, BRIAN STRICKLIN, MARIO MATTHEWS, AND SIRENA LANDFAIR'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 20)

## I.   RECOMMENDATION

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendants Tavon Brown, J. Czarniowski, Crystal Trout, Brian Stricklin, Mario Matthews, and Sirena Landfair's motion to dismiss and for summary judgment. If adopted, the Court would dismiss the complaint in its entirety.

## II.   REPORT

### A. Background

---

[1] Although misspelled in the docket, Officer Brown's first name is correctly spelled as "Taron." (*See, e.g.*, ECF No. 8, PageID.53).

1

Charles Moore is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"), who was prescribed an extra "pillow" and "bedroll" as treatment for pain and numbness in his neck, back, shoulders, and legs. (ECF No. 1, PageID.3, 4–5, 15–16, 18, ¶¶ 7, 17–18). Yet Moore alleges that several officials refused to fulfill this prescription.

On October 19, 2020, Moore presented to his physician complaining of numbness in his right leg, a "stiff neck," and pain in his back and left shoulder. (*Id.* at PageID.3–5, ¶¶ 7, 17). During the appointment, Moore's physician prescribed acetaminophen and advised Moore to "stretch[]" and use an "extra pillow and bed roll," while sleeping. (*Id.* at PageID.5, 16, ¶ 18). The purpose of these items, Moore alleges, was to elevate his leg and neck while he slept, alleviating pressure on his neck and spine. (*Id.* at PageID.5, ¶ 18).

According to Moore's complaint, his physician gave him "three" physical "copies" of a "medical detail" for the bedroll and pillow during the October 19 appointment and instructed him to "deliver one copy to his unit officer who" would then supply the extra pillow and bedroll. (*Id.* (internal quotation marks omitted)). Yet the copy of the detail Moore attaches to his complaint is dated October 21. (*See id.* (citing *id.* at PageID.18). And in a contemporaneous medical note, his physician wrote that she did not "update" Moore's "medical detail special accommodation" list until the twenty-first. (*Id.* at PageID.17).

2

In any event, Moore attaches a medical note from the October 19 appointment confirming that his physician prescribed the extra pillow and bedroll at that appointment.  (*Id.* at PageID.16).  And he alleges that on October 19, "[u]pon leaving" his appointment, he approached Officer Taron Brown and handed him a copy of the "detail."  (*Id.* at PageID.5, ¶ 18).

But Officer Brown refused to supply Moore with a pillow and bedroll.  (*Id.* at PageID.5, ¶¶ 20–21).  Although Brown had access to a "cabinet" containing pillows and bedrolls, he instructed Moore to instead ask "the counselor for an extra pillow and bedroll."  (*Id.* at PageID.5, ¶ 21; *see also id.* at PageID.34).

After a "heated exchange" with Officer Brown, Moore walked away from Brown's desk.  (*Id.* at PageID.5, ¶ 21).  But he returned "[a] short while later" to ask Officer Kruttschnitt, who was stationed at the desk alongside Officer Brown, to provide an extra pillow and bedroll.  (*Id.* at PageID.6, ¶ 22).  Officer Brown then interrupted, telling Moore that officers need not "honor medical details."  (*Id.* at PageID.6, ¶ 23).  Officer Kruttschnitt disagreed with Brown and told Plaintiff to leave the area while he and Brown discussed the issue.  (*Id.* at PageID.6, ¶ 24).

That evening, Officer Kruttschnitt "called" Moore back to his "desk" and explained that "he had informed" another officer, Sergeant Reynolds, that Moore "had a valid medical detail" and "requested permission to" supply Moore with a pillow and bedroll.  (*Id.* at PageID.6, ¶ 25; *see id.* at PageID.24).  Yet, according to

3

Officer Kruttschnitt, Sergeant Reynolds prohibited him from doing so, reasoning that Moore's medical needs were "not important." (*Id.*)  Moore then wrote a letter to a nurse, Crystal Brown, complaining of Officer Brown and Sergeant Kennedy's conduct. (*Id.* at PageID.6–7, ¶ 26).  Nurse Brown responded that neither she nor any employee in "[h]ealth care" could "supply pillows," and she advised Moore to address his concerns with "the counselor" or the "ARUS" as officers working in "[c]ustody" are "required" to "honor" medical details if they have the means to do so. (*Id.* at PageID.27).

A few days later, Moore filed a formal "grievance" against Sergeant Reynolds and Officer Brown. (*Id.* at PageID.7, ¶ 27).  The MDOC provides a three-step, internal process for prisoners to raise formal complaints. (ECF No. 20-2, PageID.121–24).  At step one, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a "grievance" within five business days. (*Id.* at PageID.121–22).  A prisoner's step one grievance must include the "[d]ates, times, places, and names of all those involved in the issue being grieved . . . ." (*Id.* at PageID.121).  Once received, the facility's "grievance coordinator" determines whether the grievance conforms with the MDOC's procedural requirements. (Id. at PageID.122).  If the coordinator finds no procedural defects, then he or she assigns an official to serve as a "respondent" to investigate the grievance and reach a disposition on its merits. (*Id.* at PageID.118,

4

122).  After the respondent's supervisor reviews the respondent's disposition before it is returned to the grievance coordinator and conveyed to the grievant.  (*Id.* at PageID.123).

An inmate who is dissatisfied with the disposition of the step one grievance or does not receive a response ten days after the due date may file a step two grievance using the appropriate form.  (*Id.* at PageID.123).  Similarly, if the inmate is dissatisfied with the step two response or does not receive a response for ten days after the response was due, he or she has ten days to file a step three grievance.  (*Id.* at PageID.124).

The grievance coordinator assigned Sergeant Matthews as the respondent to Moore's step one grievance.  (ECF No. 1, PageID.7, 20, 22, ¶ 28).  Matthews began his investigation by interviewing Officer Brown who explained that he declined to provide Moore's requested medical supplies because Moore did not present a "valid detail."  (*Id.* at PageID.7, 22, ¶ 28).  Matthews did not interview Sergeant Reynolds or Officer Kruttschnitt because Moore mistakenly referred to Reynolds as "Sergeant Kennedy" and he only referred to Officer Kruttschnitt as "Officer K."  (*Id.* at PageID.22, 24).   When interviewed by Matthews, Moore maintained that he presented a medical detail to Officer Brown, and argued that even if he had not, Officer Brown should have contacted medical staff to confirm his prescription.  (*Id.* at PageID.7, ¶ 29).  At the end of the interview, Matthews assured Moore that the

5

staff in his unit would "honor" his detail if Moore presented it to them.  (*Id.* at PageID.7–8, ¶ 30).  Moore followed Matthews's advice as soon as he returned to his unit following the interview.  (*Id.* at PageID.8, ¶ 30).  But when he presented the detail to a group of unidentified officers, they too "refused" to provide an additional pillow and bedroll.  (*Id.*)

Matthews later denied Moore's grievance on its merits, and Moore appealed his grievance through step three, receiving rejections on the merits at each step.  (*Id.* at PageID.20, 23–24; *see also* ECF No. 20-3, PageID.144, 146).  After Moore learned that Matthews had rejected his step one grievance, he confronted Officer Brown to ask why he "lied" that he did not present a valid medical detail.  (ECF No. 1, PageID.8, ¶ 31).  According to Moore, Officer Brown admitted that he lied to Sergeant Matthews because he "did not want to get written up," but he "promised to provide" Moore with an extra pillow and blanket.  (*Id.*)  Brown did not keep this promise.  (*Id.*)

By January 2021, officials still had not filled Moore's medical detail.  (*Id.* at PageID.8, ¶ 32).  So, Moore sent a written message to Crystal Trout, a nurse at the prison, complaining of Officer Brown's continuing "refus[al] to honor" the medical detail.  (*Id.*)  Nurse Trout responded by providing Moore with three additional copies of his detail and advising him to present a copy to the prison's "quartermaster."  (*Id.* at PageID.30).  A few days later, Moore wrote back to Nurse Trout to explain that

6

only "officers," not the quartermaster, carried pillows, yet "no officer" had "issued" his prescribed pillow or bedroll.  (*Id.* at PagID.8–9, 28, ¶ 33).  Moore also sent this letter to the health unit manager ("HUM"), Sirena Landfair, and an unidentified "nursing supervisor," but received no response.  (*Id.*)

About one month later, Moore wrote to another nurse, Brian Stricklin.  (*Id.* at PageID.9, 30, ¶ 35).  Again, Moore complained of Brown's "continue[d]" refusal to fill his prescription.  (*Id.* at PageID.30).  Nurse Stricklin told Moore that the healthcare unit did not have any pillows, and like Nurse Trout, he advised Moore to request a pillow from the quartermaster.  (*Id.*)  Nurse Stricklin also recommended that Moore file a grievance against Officer Brown.  (*Id.*)

Moore later filed a second grievance.  (*Id.* at PageID.9, 31, ¶ 36).  But rather than name Officer Brown or the other officers who refused to supply his prescribed pillow and bedroll, Moore named HUM Landfair, Nurse Stricklin, the unidentified "nursing supervisor," and "all other John and Jane Doe officials responsible for providing . . . health care, including ensuring that [his] medical needs are being met by custody staff[.]"  (*Id.*)  The respondent, Nurse Czarniowski, denied Moore's grievance because he, rather than healthcare staff, was "responsibl[e]" for "contact[ing] custody to receive extra pillows . . . ."  (*Id.* at PageID.32).  Landfair reviewed Czarniowski's response and approved his decision.  (*Id.*)  Moore appealed

this grievance through step three and was rejected on the merits at each step. (*Id.* at PageID.33; ECF No. 20-3, PageID.138–39).

Almost a week after Moore filed his step one grievance, Officer Brown asked Moore to report to his desk to receive a phone call regarding his grievance. (ECF No. 1, PageID.9–10, ¶ 37).  Moore did not know the identity of the caller, but he informed the caller that Officer Brown still had not supplied his pillow and bedroll. (*Id.*)  Moore then handed the phone back to Officer Brown who told the caller that "there were no pillows available." (*Id.*)  But when Brown gave the returned the p[hone to Moore, Moore told the caller that "there was a large storage locker . . . full of pillows" at the prison. (*Id.*)  Moore gave the phone back to Officer Brown who, after arguing with the caller, "slammed the phone down[,] . . . stormed over to the storage locker," grabbed a pillow, and "threw it" at Moore. (*Id.*)  The following September, Moore transferred to a different facility and received an additional pillow and bedroll upon arrival. (*Id.*)

Moore later filed this action against Officer Brown, Nurse Trout, Nurse Brown, Nurse Stricklin, Sergeant Reynolds, Sergeant Matthews, Nurse Czarniowski, and HUM Landfair. (*Id.* at PageID.1).  He alleges that the Defendants violated his Fourteenth Amendment right to due process and his Eighth Amendment right to be free of cruel and unusual punishment. (*Id.* at PageID.12–14).  He also alleges violations of the Americans with Disabilities Act ("ADA") and the

Rehabilitation Act ("RA").  (*Id.* at PageID.11–12).  Except for Sergeant Reynolds and Nurse Brown, the Defendants filed a joint motion asking the Court to dismiss various claims under either Federal Rule of Civil Procedure 12(b)(6) or Rule 56(a). (ECF No. 20).  Moore has not responded to the Defendants' motion, and the deadline to do so has passed.

### B. Standards of Review

#### 1.    Rule 12(b)(6)

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6).  A complaint must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations.  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Moore filed his complaint pro se, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### 2.    Summary Judgment

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would affect "the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ." *Id.* at 249–50, 255. Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004). The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must show that there is sufficient evidence in the record that "a reasonable finder of fact could find in its favor." *Anderson*, 477 U.S. at 248.

### C.    Discussion

### 1.    The Americans With Disabilities Act, the Rehabilitation Act, and the Fourteenth Amendment

Before addressing the Defendants' motion, I recommend that the Court dismiss Moore's claims under the RA, the ADA, and the Fourteenth Amendment on its own accord.  The Defendants move the Court to dismiss these claims only under Rule 56 on the basis that Moore did not exhaust these claims as required by the Prison Litigation Reform Act ("PLRA") because he did not cite these laws in his grievances.  (ECF No. 20, PageID.113).  But a grievance need only notify officials of the injury underlying the prisoner's claims, not the legal theories the prisoner later relies on in his or her complaint.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120–21 (9th Cir. 2009); *Hall v. Chapman*, No. 4:15-CV-13771, 2017 WL 7053942, at *7 (E.D. Mich. Dec. 20, 2017).  Because Moore seeks relief under the ADA, the RA, and the Fourteenth Amendment to redress the same injury addressed in his grievances (that is, the Defendants' failure to supply his prescribed pillow and bedroll), his grievances serve to exhaust these claims.  *See Jones v. Lewis*, 334 F. App'x 66, 68 (9th Cir. 2009).

Although the Defendants do not challenge the sufficiency of Moore's pleadings on his RA, ADA, and Fourteenth Amendment claims, the Court has an independent obligation to dismiss any claims that that Moore has not plausibly alleged, both because he is a prisoner and because he proceeds *in forma pauperis*.

11

28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A (2018); 42 U.S.C. § 1997e(c)(1) (2018); (ECF No. 6).

Start with Moore's claims under the ADA and the RA. Moore alleges that the Defendants violated both statutes by interfering with his access to medical treatment. (*See* ECF No. 1, PageID.11–12). But the ADA and the RA protect individuals from discrimination, not deficient medical care. *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014); *see S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008) (explaining that apart from a few differences not relevant here, the RA and the ADA provide coextensive protections). So "mere allegations of inadequate medical care do not raise a viable discrimination claim." *Cannon v. Eleby*, 187 F.3d 634 (6th Cir. 1999); *cf. Smith v. Aims*, No. 20-12013, 2023 WL 2297448, at *5 (E.D. Mich. Jan. 24, 2023); *Vandiver v. Corizon, LLC*, No. 16-13926, 2017 WL 6523643, at *4–5 (E.D. Mich. Dec. 21, 2017). Thus, I recommend that the Court dismiss Moore's ADA and RA claims as to each Defendant.

Nor does Moore allege a plausible due process violation. The Due Process Clause of the Fourteenth Amendment provides both substantive rights and procedural safeguards. *Klimik v. Kent Cty. Sheriff's Dept.*, 91 F. App'x 396, 402 (6th Cir. 2004). Although Moore does not clarify whether he alleges a substantive or procedural violation, he does not allege facts showing that he is entitled to relief under either theory. To the extent Moore alleges a procedural due process violation,

12

he alleges no facts showing that the Defendants deprived him of an adequate procedure to challenge the Defendants' failure to supply him with an extra pillow and bedroll.  *See generally Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (outlining the elements of a procedural due process claim).  And to the extent Moore intends to bring a substantive due process claim, I suggest that he still fails to state a plausible claim for relief because his injury implicates the Eighth Amendment and "the rubric of substantive due process" cannot be used to analyze a claim "covered by a specific constitutional provision."  *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

### 2.    Motion to Dismiss

That leaves Moore's claim that the Defendants violated his Eighth Amendment protection against cruel and unusual punishment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  Under the Eighth Amendment, prison authorities are obligated to provide medical care to prisoners.  *Solomon*, 2012 WL 2522493 at *6 (citing *Estelle v. Gamble*, 429 U.S. 102, 103–04 (1976)).  A failure to do so "would be inconsistent with contemporary standards of decency."  *Id.*  When a prison official is deliberately indifferent to the

serious medical needs of a prisoner, they violate the prisoner's Eighth Amendment right. *Id.*

To prove a claim that a prisoner's Eighth Amendment right has been violated, the prisoner must show that the official was deliberately indifferent to his or her serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "A viable Eighth Amendment claim has both an objective and subjective prong, requiring the inmate to show that (1) he had an objectively serious medical need, and (2) 'an official knew of [his] serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably' to it." *Est. of Miller v. Michigan Dep't of Corr.*, No. 22-10934, 2023 WL 122903, at *3 (E.D. Mich. Jan. 6, 2023); *see also Farmer*, 511 U.S. at 834. To satisfy the subjective component, the plaintiff must show that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See id.* (citing *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)).

Here, the alleged injury, denial of an extra pillow and bed roll that had been ordered, is not of constitutional magnitude. Even if there had been no medical order for the extra pillow or bedroll, the constitution would not be violated *Dudley v. Streeval*, 2021 WL 1054390, at *5 (6th Cir. Feb. 8, 2021)(denial of support for degenerative disc disease including an extra pillow, bed wedge and extra mattress was insufficient to support a deliberate indifference claim); *Montgomery v. Wellpath*

*Medical*, 2022 WL 3589571, at *9-10   (M.D. Tenn. Aug. 22, 2022)("Because [plaintiff] has not plausibly alleged that the denial of his requests for an extra blanket and better mattress violated a federal right, these claims cannot proceed against [defendant] and should be dismissed" despite plaintiff's contention that his back pain worsened after the denial).Since Plaintiff had no constitutional right to having the extra pillow and bedroll ordered for him, the constitution is not offended by Defendants failing to follow an order that provided Plaintiff with more than the constitution requires. I therefore suggest that the Eighth Amendment claim should be dismissed for this reason alone.

This result is buttressed by an analysis of the individual actions alleged. While the Eighth Amendment affords Moore the right to be free of cruel and unusual punishment, it does not grant him a private right of action to enforce this right in a civil lawsuit against state officials. *Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982); *see Harris v. Louisville Jefferson Cty. Metro Gov't*, No. 3:11-CV-338-H, 2012 WL 777263, at *1 (W.D. Ky. Mar. 8, 2012) (citing *Zinermon v. Burch*, 494 U.S 113, 125 (1990)).   Moore's ability to enforce the Eighth Amendment's prohibition of cruel and unusual punishment comes instead from a federal statute: 42 U.S.C. § 1983. *Harris*, 2012 WL 777263, at *1.  Section 1983 imposes liability on any state official who "subjects, or causes to be subjected, any citizen of the

United States . . . to the deprivation of any rights" guaranteed by the Constitution. 42 U.S.C. § 1983.

By limiting liability to officials who "subject[]" citizens to a deprivation of their federal rights, § 1983 requires an "affirmative link" between the plaintiff's injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976). To demonstrate an affirmative link, a plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Id.* at 375; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Put another way, a § 1983 plaintiff must demonstrate that each defendant's conduct or inaction was the proximate cause of his constitutional injury. *Powers v. Hamilton Cty. Pub. Def.*, 501 F.3d 592, 608 (6th Cir. 2007). And aside from § 1983, the Eighth Amendment itself contains a parallel causation requirement, limiting liability to those officials whose "act[s] or omission[s]" cause the prisoner's injury. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022); *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021).

Moore alleges that Nurse Trout and Nurse Stricklin subjected him to cruel and unusual punishment by "refus[ing]" to help him obtain his prescribed "medical supplies." (ECF No. 1, PageID.8, 9, 27, 30–31, ¶¶ 32, 35). But his complaint does explain how their failure to act caused his injury. (*Id.*) That is, he does not explain

16

what Nurses Trout and Stricklin could have done to ensure that he received his pillow and bedroll. (*Id.*)

Moore does not allege that Trout, Stricklin, or any healthcare employee could have provided his medical detail. He does not allege that medical staff could access pillows and bedrolls, that they could purchase these supplies on his behalf, or that they were authorized to dispense pillows and bedrolls. In fact, the exhibits attached to his complaint suggest that only custodial officers could access and supply these items. (*Id.* at PageID.30, 32; *see id.* at PageID.19–20). *See generally Rondigo, LLC v. Twp. Of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (explaining that courts may consider exhibits attached to the complaint under Rule 12(b)(6)). While healthcare staff could write medical details, Moore does not allege that they could compel custodial staff to honor their details. *Cf. Washington v. Caldwell*, No. 11-10448, 2013 WL 1192306, at *4 (E.D. Mich. Mar. 22, 2013).

Despite being unable to provide his prescribed blanket and bedroll, Moore concedes that Trout and Stricklin endeavored to assist him. Trout, for example, gave Moore three additional copies of his detail that he could present to custodial staff, and she suggested that he submit one of the copies to the quartermaster. (ECF No. 1, PageID.27). Likewise, Stricklin advised Moore to request his materials from the quartermaster, and if that did not work, he suggested that Moore "[u]se the grievance process" to compel the custodial officers to honor his medical detail. (*Id.* at

PageID.30).  At bottom, Moore does not plausibly allege that Stricklin and Trout's failure to act inhibited his efforts to obtain a pillow and bedroll.  *Cf. Martin v. Kazulkina*, No. 12-cv-14286, 2017 WL 971706, at \*3 (E.D. Mich. Feb. 21, 2017); *White v. Warren*, No. 07-12531, 2009 WL 276950, at \*2 (E.D. Mich. Feb. 5, 2009).

So too, Moore fails to plausibly allege that Sergeant Matthews, Nurse Czarniowski, and HUM Landfair caused his alleged injury.  Moore only alleges Sergeant Matthews and Nurse Czarniowski contributed to his injury by denying his step one grievances.  (ECF No. 1, PageID.7, 22, 32, ¶¶ 27–29).  But "the denial of [a grievance] cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation." *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *see also Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008).

As for HUM Landfair, Moore appears to allege that she subjected him to cruel and unusual punishment both by approving Nurse Czarniowski's decision to deny his step one grievance and by ignoring a letter he sent to her requesting assistance in obtaining his pillow and bedroll.  (*See* ECF No. 1, PageID.9, 28, 32, ¶ 36).  But again, it is not unlawful for officials to deny meritorious grievances, and as discussed above, Moore does not allege that healthcare officials, such as Landfair, could supply the materials listed in his detail.

### 3.    Exhaustion

18

Should the Court disagree and find that Plaintiff has a viable Eighth Amendment claim, I suggest that summary judgment for failure to exhaust should not be granted based on a failure to exhaust.

In the alternative, HUM Landfair, Nurse Czarniowski, Sergeant Matthews, and Nurse Trout argue that the Court should grant summary judgment in their favor because Moore did not file any grievances against them and thus failed to exhaust his administrative remedies before filing his complaint, as required by the PLRA. (ECF No. 20, PageID.111–13).  Likewise, Officer Brown moves for partial summary judgment, arguing that because Moore only filed a grievance regarding his initial refusal to honor the medical detail on October 19, he did not exhaust his administrative remedies as to Officer Brown's continued failure to supply the pillow and bedroll after that date.  (*Id.*)

Under the PLRA, prisoners may not bring actions against prison officials to challenge the conditions of their confinement without first exhausting their administrative remedies.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001).  And not only must prisoners exhaust their administrative remedies before filing a complaint, but they must do so "properly," meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules . . . ."  *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).

Because exhaustion is an affirmative defense, prison officials, not inmates, carry the burden proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Until a defendant proves otherwise, the Court must presume that the prisoner properly exhausted his or her administrative remedies before filing suit. *Id.*; *see also Napier v. Laurel Cty.*, 636 F.3d 218, 225 (6th Cir. 2011). And where a defendant seeks summary judgment on basis of exhaustion, the defendant also carries the initial burden presenting evidence in support of defense showing that there is no genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323.

The defendants here have not met this burden. Unlike a party who seeks summary judgment on an issue that its opponent carries the burden of proof, a defendant moving for summary judgment on an affirmative defense cannot simply assert an absence of evidence and leave its opponent to its proofs. *See id.*; *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001). That is so even where the affirmative defense at issue requires the defendant to prove a negative, such as a prisoner's failure to exhaust. *Napier*, 636 F.3d at 225; *see Lamb v. Kendrick*, 52 F.4th 286, 294–95, 298 (6th Cir. 2022); *accord Mercado v. Dep't of Corr.*, No. 3:16-CV-1622, 2018 WL 2390139, at *6 (D. Conn. May 25, 2018). True, proving the absence of evidence may often be a difficult task. But "[a]t the end of the day, someone must carry the burden" of proving or disproving exhaustion," and the PLRA reflects Congress's judgment that "it is considerably easier for a prison

20

administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion." *Lamb*, 52 F.4th at 295 (internal quotation marks omitted).

To prove the absence of any grievances that could have exhausted the prisoner's claims, a defendant must do more than pluck a few inadequate grievances from the prisoner's record. Take *Brown v. Beard* for example. No. 13-00465, 2021 WL 1807875 (E.D. Pa. May 5, 2021). There, a group of prison medical providers moved for summary judgment on the grounds that an inmate did not exhaust his administrative remedies before filing his complaint. *Id.* at *6. The providers claimed that the plaintiff had not fully exhausted any relevant grievances "in the two[-]year time period preceding the [c]omplaint." *Id.* at *7 (internal quotation marks omitted). But in support of that assertion, they only "attached" a nonexhaustive assortment of the plaintiff's "grievances as exhibits to their motion for summary judgment." *Id.* They did not cite a "declaration" or other "record evidence" establishing that "they performed an exhaustive search to identify all applicable grievances." *Id.* Without such evidence, the Eastern District of Pennsylvania found that the providers had not carried their burden of proof. *Id.* The existence of a few inadequate grievances, the court reasoned, did not prove the absence of other relevant grievances. *Id.*

How can a defendant prove the absence of any fully exhausted grievances? A defendant might, as the *Beard* court suggested, supply an affidavit or declaration

from an individual who conducted an "exhaustive search" of the prisoner's records, attesting that the prisoner filed no other relevant grievances. *See id.* Alternatively, a defendant may supply *all* of the plaintiff's grievances alongside an affidavit certifying those affidavits comprise the prisoner's complete grievance record. *See Mercado*, 2018 WL 2390139, at *6.

Yet the defendants here provide no such evidence. To prove that Moore did not exhaust his administrative remedies, the Defendants supply a copy of the MDOC's grievance policy alongside a "report" of all grievances Moore appealed through the entire grievance process since 2017. (ECF No. 20-2, ECF No. 20-3, PageID.129–37). Attached to the report, the Defendants provide an affidavit from a "departmental analyst" stating that she pulled the report from a "database that tracks all prisoner/parolee grievances filed" through step three. (ECF No. 20-3, PageID.127–28).

Although the report shows that Moore filed (and later, fully exhausted) at least five grievances waiting for the Department to carry out his medical detail,[2] the Defendants provide the underlying documentation for only two of those grievances. (ECF No. 20-3, PageID.138–47). According to Defense Counsel, the other three grievances Moore filed during this period are not "relevant" to his complaint. (ECF No. 20, PageID.112). But he provides no evidence to show that these grievances are

---

[2] (*Compare id.* at PageID.132–34, with ECF No. 1, PageID.5, 9–10, ¶¶ 18, 37).

irrelevant, and the "grievance report" attached to his brief provides no information regarding the subject matter of these grievances. (ECF No. 20-3, PageID.129–37). In effect, Counsel offers nothing more than his own word that the two grievances attached to his brief are the only grievances relevant to this case. But an attorney's statements in a brief are not evidence, so the Court cannot accept Counsel's assertion that the missing grievances could not have exhausted Moore's claims. *Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018).

As in *Brown*, the Defendants have not provided enough evidence to disprove the existence of a grievance that could have exhausted Moore's claims against them.[3]

---

[3] Even if the Defendants supported their assertion that the two grievances attached to their motion are the only relevant grievances in Moore's record, the Court should still deny Officer Brown's motion for partial summary judgment. Officer Brown characterizes Moore's October 2020 grievance to challenge only his initial refusal to supply a pillow and bedroll on October 19, not his continued refusal to honor the accommodation over the next several months. (ECF No. 20, PageID.96–97, 112–13). Thus, he argues, Moore only exhausted his Eighth Amendment claim insofar as it concerns Brown's conduct on October 19. (*Id.*) To be sure, Moore only references the October 19 incident in his grievance, but that is because Moore filed his grievance just a few days after Brown initially refused to honor his medical detail. (ECF No. 20-3, PageID.146). Read fairly, the gravamen of Moore's grievance was that Brown would not honor his medical detail. (*See id.*) There is no sound reason to think that Moore's grievance was only concerned with his ability to obtain his pillow and bedroll on October 19 but not on any day after. In other words, Moore grieved an ongoing harm, and he need not have continued to file grievances as Officer Brown continued to neglect his medical detail. *Morgan v. Trierweiler*, 67 F.4th 362, 369–71 (6th Cir. 2023) (holding that grievances concerning "ongoing harm[s]" serve to exhaust the prisoner's administrative remedies for any future events stemming from the same, ongoing pattern of harm). Moore's initial grievance exhausted his entire Eighth Amendment claim against Officer Brown.

## C. Conclusion

For these reasons, **I RECOMMEND** that the Court **GRANT** Defendants' motion to dismiss and for summary judgment (ECF No. 20).

## III.  <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains.

24

Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 15, 2024                                s/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge